UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| JOZEF DE JONGE and SONJA DE JONGE, | Civil Action |
| Plaintiffs, | 08 CV 5212 (MGC) |
| v. | ECF CASE |
| AIMCO 240 WEST 73RD STREET, LLC, AIMCO 240 WEST 73RD STREET CO-OWNER, LLC, WOOGO NY L.P., and GLOBAL HOTELS INC., | **JOINT PRETRIAL ORDER** |
| Defendants. | |

------------------------------------------------------------x

1. **Best estimate of the length of trial**

   Four days.

2. **Undisputed Facts**

   Apartment Investment Management Company (AIMCO) is a real estate investment trust that owns various properties throughout the United States through various corporate structures.

   AIMCO 240 West 73rd Street, LLC and AIMCO 240 West 73rd Street Co-owner, LLC ("the AIMCO defendants") are the owners of the Central Park-Tempo, located at 240 West 73rd Street in Manhattan ("the premises"). The premises has 200 residential units, about 60% of which were leased to long-term residential tenants. Six apartments were leased to defendant Global Hotels ("Global"), including Apartment 1104, under a Lease Agreement ("the lease") for the term January 1, 2007 to September 20, 2007. A Renewal Lease, incorporating the lease terms, was entered into for 22 apartments for the term October 1, 2007 to September 30, 2008.

   Section 7, "Services and Facilities' subsection A, "Required Services" of the lease provides, "Owner will provide cold and hot water and heat as required by law, repairs to the

1

Apartments ......" Subsection A, section 14, "Access and Entry" provides that the Owner may enter the apartments to (i) ..."inspect the Apartments and to make any necessary repairs or alterations Owner decides as necessary.." Subsection B, section 14 provides that "No advance written notice shall be required [to make any necessary repairs or alterations] and an oral demand shall be sufficient."  Subsection C, section 14, provides that the Owner or its representatives many enter an apartment without the tenant being personally present.

Section 6, subsection A of the lease requires the tenant to "take good care of the Apartments" and further that "windows within each Apartment must be closed and locked when no person is within the Apartment."

AIMCO employed Patrice Richardson ("Richardson") as a Community Manager, who was responsible for overseeing the employees and maintenance at the premises.  Richardson would visit the premises once or twice a week, from between 45 minutes to one-hour and a half, to meet with Esquilin and the staff.

AIMCO employed Wilfredo Esquilin ("Esquilin") as a full-time Superintendent at the premises and provided him with an apartment and office there.  It also employed two handymen, three full-time and one part-time doormen, and a number of porters at the premises.  AIMCO kept tools necessary for maintenance and repairs in a basement office.

AIMCO also established a protocol for receiving, processing and dealing with tenant maintenance issues.  A tenant would complete a work order request, and some occasions, might call Esquilin or the AIMCO concierge, who would fill out a work order form.  Filled out work orders were kept in a book in a file cabinet in Esquilin's office.  Work order repairs would either be made by Esquilin and his staff or an outside contractor retained by AIMCO.

Woogo NY L.P. ("Woogo") operated as Global's marketing arm and made apartments at the premises available through various online sites, including Expedia, the travel site. Woogo also managed the leased apartments at the premises where it maintained an office and administrative staff to handle its guests.

Plaintiffs Jozef and Sonja de Jonge (pronounced dee Youngeh), husband and wife, are German citizens and residents of Waldfeucht, Germany. In planning for their trip to the United States in 2008, they booked a room at the premises through the online travel site Expedia.de (Expedia Germany), for the period February 11, 2008 to February 16, 2008, which had been listed at the site by Woogo/Global.

The de Jonge's were assigned Apartment 1104 at The Tempo by Woogo/Global. During the evening of February 11, Josef de Jonge sought to open the bottom of one of two metal-framed double-hung windows to ventilate the Apartment. He undid the latch at the top of the bottom window frame with the fingers of both hands resting there. As he undid the latch, the upper window frame went into a free fall onto Mr. de Jonge's fingers, causing serious and permanent injuries.

After the accident, the balances and latch were replaced on the subject window by outside contractor Midtown Glass, Inc.

3.      **Plaintiff's Contention of Facts**

    A.      **Liability**

Esquilin testified that there were generally problems with window balances throughout the premises. (Balances are spring rods on both sides of a window that allow it to be smoothly opened and closed and to remain open as desired). He would report these problems to

Richardson, both verbally and in writing when there was a work order (11/4/11 Wilfredo Esquilin Dep. Tr. at 12-13). Esquilin testified that it would take at least six weeks from the time window problems were identified to having the problems actually addressed by an outside contractor (Esquilin at 15-17). AIMCO generally delayed repairs at the premises because of multiple levels of approval for outside work and "priorities" (Esquilin at 31-32, 87).

At the time of Jozef de Jonge's accident, Esquilin testified that there had been an outstanding work order, for two to three weeks, to repair the balances on the subject window (Esquilin at 27, 45-48, 77-78). He considered the repair issue to be a major problem and hazardous (Esquilin at 79). There were also outstanding work orders to replace the balances in other apartments at that time (9/1/11 Patrice Richardson Dep. Tr. at 47-48; Esquilin at 27-28). Esquilin knew about the open work orders prior to Jozef de Jonge's accident (See Esquilin at 28). When he came to Room 1104 to inspect the window after the accident, Esquilin found that the top window was completely down and locked in the open position, very difficult to move (Esquilin at 21).

Notwithstanding that AIMCO was fully aware of Josef de Jonge's accident, the broken window balances were not retained and presumably disposed of by Midtown Glass (See Esquilin at 91).

      **B.**    **Damages**

As a consequence of the accident, Jozef De Jonge suffered a permanent amputation of the distal phalanx of his right small finger (pinky) of his dominant hand and tip fractures and unsightly permanent deformities to the nails and nail beds of his left long (middle) and ring fingers. Dr. Nelson Botwinick's examination revealed a significant loss of strength in Jozef de

4

Jonge's dominant hand, which he attributes to the loss of the amputated portion of the small finger that would contribute to a significant portion of the power grip.  Dr. Botwinick attributed his residual pain and sensitivity to tendon and nerve damage suffered at the time of the original injury (5/25/11 Nelson Botwinick, MD report and expected trial testimony).

At his deposition, Jozef de Jonge testified to his continuing difficulties with his left finger nails, including the pulling off of nail fragments, bleeding and infection.  He also testified to workplace, home chore and personal activity limitations.  Co-plaintiff Sonja De Jonge testified to her husband's limitations as they affect her.  Both will testify at trial.

**4.        Plaintiffs' Contentions of Law**

A landlord's general duty to persons on its property is well-established.  While a landlord is not the insurer of safety, it is not excused from undertaking minimal precautions to protect persons on its property from foreseeable harm. Mason v. U.E.S.S. Leasing Corp., 96 N.Y.2d 875, 878 (2001).  In *Basso v. Miller*, 40 NY2d 233, 243 (1976), the New York Court of Appeals held that an owner's duty to maintain a reasonably safe property does not vary with or depend upon a plaintiff's status, whether invitee, licensee or trespasser.  As invitees or tenants of Global/Woogo, plaintiffs are entitled to maintain this action against the owner AIMCO defendants.

New York Multiple Dwelling Law (MDL) 78 and NYC Administrative Code 27-127, which has the force of statute, *Guzman v. Haven Plaza Housing Development Fund*, 69 N.Y.2d 559, 565-566 (1987), govern the AIMCO defendants' responsibilities for maintaining the safety of the premises.  MDL 78  mandates, "[e]very multiple dwelling, including its roof or roofs, and every part thereof and the lot upon which it is situated, shall be kept in good repair" and it

imposes a "nondelegable duty on owners to maintain their premises in a reasonably safe condition." *Mas v. Two Bridges Assoc.*, 75 N.Y.2d 680, 687 (1990). MDL 78 even applies to owner supplied fixtures and appliances. *Trimarco v. Klein*, 56 N.Y.2d 98, 105 (1982).

An out-of-possession landlord is not completely out-of-possession, and therefore liable for MDL 78 and NYC Admin. Code 27-127 violations, where it maintains the right to enter to make repairs *Guzman*, 69 N.Y.2d at 565-566; *see Bonifacio v. 910-930 Southern Blvd LLC*, 295 A.D.2d 86, 90-91 (1st Dept, 2002)(an out-of-possession owner may still be held liable if circumstances show that it owner retained some other kind of control beyond the right to reenter).

The AIMCO defendants cannot escape Admin. Code 27-127 and MDL 78 liability. First, the external building windows are a part of the structure of a multiple dwelling. *See Trimarco,* 56 N.Y.2d at 105. Second, the AIMCO defendants were not completely out-of-possession. They employed Esquilin and provided him with an on-the-premises apartment and office. They also employed two handymen and porters and provided additional spaces for their use. The AIMCO defendants assumed all responsibility for maintenance and housekeeping for their long-term tenants and maintenance for companies, like Global/Woogo, who leased large blocks of apartments. They maintained their own tools at the premises and put in place a mandatory protocol for receiving, processing and dealing with tenant maintenance issues. Repairs would either be made by Esquilin and his staff or an outside contractor retained by AIMCO.

The reservation of the right of entry is sufficient, without more, to charge the owner with constructive notice of any building defect covered by MDL 78. *Guzman*, 69 N.Y.2d at 566; *accord Lopez v. 1372 Shakespeare Avenue HSG*, 299 A.D.2d 230, 231 (1st Dept, 2002).

Based on Esquilin's testimony, there was an actual unfiled work order as to broken

balances on the subject window, so that even if actual or constructive notice was required under MDL 78, as opposed to imputed, the AIMCO defendants had actual knowledge of the defective and hazardous condition.

The AIMCO defendants' conduct was a substantial cause, indeed the sole proximate cause of plaintiffs' injuries, and accordingly, they are liable to them for their damages and will be responsible for the full amount of any judgment as their liability clearly exceeds 50%.

**5A.     AIMCO Defendants' Contentions of Fact**

    **A.     Liability**

Section 24, subsection E of the lease required Global to procure insurance to insure against damage to persons or property, and further include the AIMCO defendants as named additional insured. Those apartments leased by Global were deemed to be in good and satisfactory condition at the time of the lease, and Global was obligated to give notice to the AIMCO defendants in the event of any defect in any part of the Building or equipment or fixtures contained therein. See Section 33.

Global was obligated to have provided proper noticed, which was defined as being in writing, signed by Global or its agent, addressed to the Owner's address at the beginning of the lease and delivered personally or by registered or certified mail. See section 28, subsection B. As part of the Lease execution, Global represented that no children 10 years of age or younger would reside in the apartments. Accordingly, no window guards were required to be installed in any of the apartments leased by Global, including Apartment 1104 at issue here. See Lease, Window Guard addendum.

As a condition of the Lease, Raz Ofer, principal of both Global and Woogo, was required

to execute a personal guarantee as to the obligations of Global under the Lease.

Global leased various apartments, including the apartment 1104 at issue in this case. Global and its agent Woogo independently advertised and rented these rooms for short and long term stays to others. AIMCO was never involved in the advertisement or rental of these Global/Woogo apartments. Global/Woogo's control over the premises rented by the plaintiff's was so pervasive that Mr. de Jonge testified that he knew the building as "Woogo Park" (5/17/11 Jozef de Jonge Transcript at 9). In fact, Mr. de Jonge testified that he relied upon the information provided by Woogo through Expedia in renting the room and that Woogo operated and was responsible for the room he was staying in (05/18/11 Jozef de Jonge Transcript at 278).

Global/Woogo were responsible for the day-to-day operation of these rooms including housekeeping of the rooms. Global/Woogo were responsible to notify AIMCO of any defects or conditions of any rooms Global rented. Ofer Helfman testified on behalf of Woogo/Global that they maintained housekeepers whose duties included cleaning windows (08/25/11 Ofer Helfman Transcript at 193). Helfman further testified that Woogo ensures guest safety by inspecting and reporting on hazards (08/25/11 Helfman Transcript at 172). Global declined the use of window guards for the rooms it rented, representing that no one under the age of 10 years would reside in the apartment. AIMCO contends that had window guards been present, the incident at issue would not have occurred as the window guard would not have allowed the top window to completely drop.

AIMCO contends that it was never notified of any window condition allegedly complained of in Room 1104, nor did any window-related injury ever occur prior to or after the incident at issue in this case. AIMCO contends that there was no notice, actual or constructive,

of the allegedly defective condition complained of herein, nor any notice of potential injury that could result from the alleged condition. Wilfredo Esquilin, the former superintendent at the premises upon whose testimony plaintiff's case relies, is unsupported. While Esquilin contends that both AIMCO and Woogo/Global knew of problems with the windows specifically in the room at issue, Woogo/Global has testified to the contrary. Further, there have been no documents or other evidence to support Esquilin's contentions. Notably, Esquilin was terminated for cause by AIMCO. AIMCO contests the credibility of Esquilin's testimony.

### B.  **Damages**

Following Mr. de Jonge's injury the evening of February 11, 2008, he sought treatment at St. Luke's Roosevelt at the emergency room and was noted to have an open injury of the right small fingertip and large hematomas of the left middle and ring fingers. X-rays were taken and revealed fracture of the distal phalanx of the right small finger and no definite fractures in the left hand. Mr. de Jonge was treated and discharged from the emergency room with antibiotics. Following some rest, Mr. de Jonge testified that he and his wife left to fill his pain reliever prescription, and then spent the rest of the day walking, eating and sightseeing (5/17/11 Jozef de Jonge Transcript at 110). The next day Mr. de Jonge and his wife spent the day walking, shopping and sightseeing (5/17/11 Jozef de Jonge Transcript at Pg. 119). On either February 14 or 15, Mr. and Mrs. de Jonge checked out of the room and drove to visit friends in Yorktown, VA (05/17/11 Jozef de Jonge Transcript at 125). Mr. de Jonge drove the vehicle on this trip (05/17/11 Jozef de Jonge Transcript at Pg. 152). The de Jonge's stayed about a week visiting friends and sightseeing, after which they flew back to Germany.

On May 15, 2011, Mr. de Jonge underwent an Independent Medical Examination by Dr.

Robert J. Strauch, Professor of Clinical Orthopaedic Surgery, Hand Upper Extremity & Microvascular Surgery at Columbia University Medical Center.  Dr. Strauch notes that following surgery in March 2008 in Germany, Mr. de Jonge had no medical treatment or therapy for his hands.  While his right small finger is missing through the DIP joint, he has full extension and flexion in all finger joints bilaterally.  His right small finger PIP joint extends fully and flexes to 90 degrees.  He has full mobility of his left middle and ring fingers despite the nails on those fingers being dystrophic.

Despite claims of lack of strength, at no time did Mr. de Jonge seek any physical therapy or other treatment for his hands.  Further, despite claims of emotional injury, at no time to Mr. de Jonge ever seek any therapy or treatment for any such alleged condition.

**5B.    Defendant Global Hotels & Woogo NY Contentions of Fact**

None provided by their counsel.

**6A.    AIMCO Defendants' Contentions of Law**

The AIMCO Defendants do not dispute that the building at 240 West 73rd Street is a multiple dwelling under New York Multiple Dwelling Law § 4. Additionally, AIMCO does not dispute that Multiple Dwelling Law §78 governs its obligations with respect to the maintenance and repair of the subject premises. However, AIMCO never had notice of any dangerous condition and therefore did not violate MDL §78, the New York City Administrative Code or any other statute. Plaintiff also alleges violations of NYC Administrative Code § 27-127. Although this statute was repealed on June 1, 2008, it is generally a restatement of an owner's obligation to keep a multiple dwelling in good repair and was not violated for the same reasons that MDL § 78 was not violated, which will be discussed below.

Although a landlord may be held liable for injury caused by a dangerous condition upon the leased premises if the landlord is under a statutory or contractual duty to maintain the premises in repair and reserves the right to enter for inspection and repair, the burden is on the Plaintiff to prove not only that a dangerous condition existed on the premises, but also that the landlord had notice of that condition and a reasonable opportunity to repair it. *See Guzman v. Haven Plaza Hous. Dev. Fund*, 69 N.Y.2d 559 (1987); *Madrid v. City of New York*, 42 N.Y.2d 1039 (1977); *Putman v. Stout*, 38 N.Y.2d 607, 612, 381 N.Y.S.2d 848 (1976); *Eddy v. Tops Friendly Mkts.*, 91 A.D.2d 1203 (1983). Here, plaintiff cannot meet its burden because there was no prior evidence that a dangerous condition existed and AIMCO did not have either actual or constructive notice of such a condition.

AIMCO contends it did not have actual or constructive notice of a dangerous condition in Plaintiff's room because the evidence shows that the there was no prior evidence that a dangerous condition existed. The owner or possessor of property has a duty to maintain his or her property "in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of the risk" *See Basso v Miller*, 40 N.Y.2d 233, 241 (1976). The scope of the landowner's duty varies with the foreseeability of the possible harm. *See Tagle v Jakob*, 97 N.Y.2d 165, 168 (2001). Here, there was no evidence of any likelihood of injury to others and no possible harm was foreseeable. In an apartment with over 200 residential units, various conditions throughout the building must be expected to need repair. However, not every condition that needs repair is one that poses a threat of danger to others. There were never any prior window-related accidents (nor subsequent) or any other indication that the subject window posed any danger of injury. Plaintiff has the burden to show

11

that a dangerous condition existed and that AIMCO had notice of that dangerous condition. However, without the existence of a dangerous condition, there can be no notice.  Here, the evidence clearly shows that there were never any prior accidents related to the windows in the building and no reason whatsoever to believe that the window at issue here, or any of the windows in the building, posed any danger to others. Plaintiff cannot show that the existence of a dangerous condition and therefore cannot show that AIMCO had either actual or constructive notice of a such a condition.

While AIMCO had the right to enter Global/Woogo's leasehold to make repairs, such entry was only made on notice of the need for a repair.. No evidence of any request for repair of the subject window has been produced in this action, and AIMCO contends that the absence of such a request shows that it did not have notice of any condition, let alone a dangerous condition. Additionally, Plaintiff cannot establish actual notice because he admitted that he never complained about the window in his room before the alleged incident and therefore failed to give AIMCO actual notice of a dangerous condition.

Plaintiffs rely in part within their contentions that there were generally problems with the windows within the building.  It is well-settled that "a general awareness of a condition is insufficient to constitute constructive notice of the specific condition" that caused Plaintiff's injury. *See Kostic v Ascent Media Group*, LLC, 79 A.D.3d 818 (2d Dept. 2010); *Mauge v Barrow St. Ale House*, 70 A.D.3d 1016 (2d Dept. 2010); *Panetta v Phoenix Beverages, Inc.*, 29 A.D.3d 659 (2d Dept. 2006). Mr. Esquilin's testimony that there were "generally problems with window balances throughout the premises" is insufficient to impute constructive notice of the alleged condition in Room 1104 to AIMCO. It is legally insufficient to show constructive notice because

AIMCO's alleged awareness of problems with window balances in the building is simply a general awareness and is not sufficient to show constructive notice of the specific condition in Room 1104.

Where there is absolutely no evidence of prior accidents or a dangerous condition as alleged herein, AIMCO cannot have actual or constructive notice of it.  Additionally, where plaintiff admits that he never made any complaints about the window in his room before the alleged incident, and where there is no credible testimony or documents showing that AIMCO received any complaints about the window, AIMCO cannot have actual notice. Lastly, plaintiffs' contention of general window problems within the building is insufficient to place AIMCO on constructive notice of the specific condition that allegedly caused plaintiff's injuries. Accordingly, plaintiffs cannot make the requisite showing of notice and cannot prevail against AIMCO.

**6B.** **Defendant Global Hotels & Woogo NY Contentions of Law**

None provided by their counsel.

**7.** **List of Proposed Witnesses by Party**

**A.** **Plaintiff**

Plaintiff Jozef de Jonge
Plaintiff Sonja de Jonge
Wilfredo Esquilin, former building Superintendent and AIMCO employee
Steven Greenberg, President, Midtown Glass
Patrice Richardson, AIMCO Community Property Manager
Nelson Botwinick, M.D., expert Orthopedist and Hand Surgeon

**B.** **AIMCO Defendants**

Patrice Richardson, AIMCO Community Manager
Julie Lee, AIMCO Human Resources

      Karl Griggs, former AIMCO VP
      Dr. Robert Strauch
      Raz Ofer, principal of Global and Woogo
      Ofer Helfman, Global and Woogo
      Keeper of Records, New York City Department of Buildings

    **C.**    **<u>Woogo/Global</u>**

    None provided by their counsel.

**8.**    **<u>List of Exhibits to be Offered by Party</u>**

    **A.**    **<u>Plaintiffs</u>**

        EXHIBIT                                       OBJECTION

1. AIMCO-Global Hotels Lease and Renewal Lease

2. Expedia.de confirmation for Central Park-Tempo reservation

3. Auslandsreise-Krankenversicherung (travel insurance service card)

4. Photos of Room 1104 and windows (taken between 2/13 & 2/16/08)

5. Photos of Jozef de Jonge's injured hands (taken between 2/12 & 2/19/08)

6. AIMCO Liability Loss Report

7. Roosevelt Hospital record

8. Roosevelt Hospital, Radiology Dept. films

9. Duane Reade, 2025 Broadway record

10. Midtown Glass 2/26/08 Invoice

11. Sentara Port Warwick ER, Newport News, VA record

12. Portside Pharmacy, Newport News, VA record

13. Wolfgang Butenbroich, M.D./Stadtische Krankenhause, Heinsberg, Germany record

14

14. Stadtische Krankenhause photographs

15. Richard Trevisan, MD office record

### B. AIMCO Defendants

| | EXHIBIT | OBJECTION |
|---|---|---|
| 1. | AIMCO-Global Hotels Lease and Renewal Lease | |
| 2. | AIMCO Liability Loss Report | |
| 3. | Midtown Glass 2/26/08 Invoice | |
| 4. | New York City Dept of Buildings Violations/ Complaints re premises at issue | |
| 5. | Photos of Room 1104 and windows (taken between 2/13 & 2/16/08) | |
| 6. | May 15, 2011 IME Report – Dr. Strauch | |
| 7. | Insurance Booklet – Trip Insurance (Exhibit 3 from 05/18/11 Deposition of Jozef De Jonge) | |
| 8. | Expedia Documents – Booking & Payment Confirmation   (Exhibits 4A through 4E from 05/18/11 Deposition of Jozef De Jonge) | |
| 9. | Woogo/Global List of Employees  (Exhibit F from 08/25/11 Deposition of Ofer Helfman) | |
| 10. | October 17, 2011 – List of Employees from WooGo/Global, emailed by Dan Spitalnic (Email with Eight Attached Pages) | |
| 11. | Woogo/Global Response to AIMCO notice to produce  (Exhibit B from 07/21/11 Deposition of Ofer Helfman) | |
| 12. | Tower Group Companies 07/13/09 letter declining coverage to AIMCO as not named as additional insured. | |

| | |
|---|---|
| 13. Documents from Civil Court of the City of New York proceeding against Wilfredo Troche a/k/a Wilfredo Esquilin. | Plaintiff objects to relevance and admissibility as impeachment evidence |
| 14. Admissions of Woogo/Global from Requests to Admit dated April 5, 2010. | |

**C.**    **Woogo/Global**

| EXHIBIT | OBJECTION |
|---|---|
| None submitted by their counsel | |

Dated: New York, New York
       May 15, 2012

                                            ERLANGER LAW FIRM PLLC
                                            Attorney for Plaintiffs

                                            By: s/ Robert K. Erlanger

                                            122 East 42 Street, Suite 518
                                            New York, New York 10168
                                            (212) 686-8045

                                            WILSON ELSER MOSKOWITZ,
                                            EDELMAN & DICKER LLP
                                            Attorneys for the AIMCO Defendants

                                            By: s/ Erik C. DiMarco

                                            150 East 42 Street
                                            New York, New York 10017-5639
                                            (212) 490-3000